Jeffrey M. Schwartz, Esq. SBN 254916
Max A. Sauler, Esq. SBN 62634
LAW OFFICES OF MANUEL H. MILLER
A Professional Corporation
20750 Ventura Blvd. Suite 440
Woodland Hills, California 91364
Telephone: (818) 710-9993
Facsimile: (818) 710-1938
MILLER4LAW@MSN.COM

Attorneys for Plaintiffs, MICHAEL NATHANSON, individually, and on behalf of other persons similarly situated and the general public

FILED
2009 JUN 15 AM 11:41
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL NATHANSON, individually, and on behalf of other persons similarly situated and the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>CARDTRONICS, INC.; CITIBANK, N.A.; CITIGROUP INC.; 7-ELEVEN, INC.; AMERICAN STATE BANK; UNIONBANCAL CORPORATION, and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. CV 08-8587 DSF (RZx)<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR:**<br><br>1. VIOLATION OF CONSUMER LEGAL REMEDIES ACT BY ADVERTISING WITHOUT INTENT TO SELL AS ADVERTISED<br>2. UNFAIR COMPETITION (BPC § 7200 ET SEQ.)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, MICHAEL NATHANSON, individually, on behalf of all others similarly situated, brings this action against defendants CARDTRONICS, INC.; CITIBANK, N.A.; CITIGROUP INC.; 7 ELEVEN, INC.; AMERICAN STATE BANK; and DOES 1 to 100, inclusive, (collectively, Defendants) and alleges, on information and belief except as to

those allegations relating to plaintiff himself, which are asserted on personal knowledge, as follows:

## INTRODUCTION

California's Financial Code § 13080 1) prohibits automated teller machine (ATM) operators from imposing a surcharge unless such surcharge is clearly disclosed; and 2) requires operators to disclose if a participating financial institution imposes a surcharge. The California Legal Remedies Act (CLRA) make it unlawful to advertise a good or service with the intent not to sell it as advertised.

Defendants operate hundreds of ATMs in California. Among other functions, Defendants' ATMs offer users the ability to check their account balances. Defendants and/or financial institutions impose a surcharge for those inquiries but Defendants fail to disclose this fact. As a result, Defendants profit from users, like Nathanson, who check their balance believing it to be a free service but would not do so if Defendants disclosed the cost. Defendants advertise their service as cost-free but do not intend to sell it that way.

## PARTIES

1. Plaintiff MICHAEL NATHANSON (Plaintiff) is an individual who is and was, at all relevant times, a resident of Los Angeles County, California.

2. Defendant CARDTRONICS, INC. is a Delaware corporation with its principal place of business in Houston, Texas.

3. Defendant CITIBANK, N.A. is a business, form unknown, with its principal place of business in Las Vegas, Nevada.

4. Defendant CITIGROUP INC. is a Delaware corporation with its principal place of business in New York, New York.

5. Defendant 7-ELEVEN, INC. is a corporation with its principal place of business in Dallas, Texas.

6. Defendant AMERICAN STATE BANK is a business, form unknown, with its principal place of business in Lubbock, Texas.

7. The true names and capacities, whether individual, corporate, associate, representative or otherwise, of the Defendants identified herein as Does 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues these Defendants by said fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of Does 1 through 100 when they have been ascertained. Does 1 through 100 are in some manner legally responsible for the wrongs and injuries alleged herein.

8. Each Defendant acted as the agent or employee of the others and each acted within the scope of that agency or employment.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to CCP § 410.10; Business and Professions Code (BPC) § 17535; and CCC § 1780.

10. This Court has jurisdiction over Defendants because each defendant is either registered to do business in California or has sufficient minimum contacts with the State of California so as to render the exercise of jurisdiction consistent with traditional notions of fair play and substantial justice.

11. Venue is proper pursuant to CCP § 395.5 because some of the actions and/or omissions alleged herein arose in the County of Los Angeles.

## CLASS ACTION ALLEGATIONS

12. This action is brought and may be properly maintained as a class action pursuant to CCP § 382 and CCC § 1781. Plaintiff brings this action on behalf of himself and other class members, defined as all California residents who used one of Defendants' ATMs and incurred a charge for checking their account balance without being aware that there was a charge for such an inquiry.

13. Excluded from the proposed class are Defendants, any entities in which any of the Defendants has a controlling interest, and the officers, directors, affiliates,

attorneys, heirs, predecessors and successors in interest, subsidiaries, employees, agents, and/or assigns of any of the Defendants.

14. The members of the classes are so numerous that joinder of all members is impracticable. While the exact number is unknown at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members.

15. There is a well-defined community of interest among members of the proposed class. The factual bases of Defendants' misconduct are common to all members and represent a common practice of wrongful conduct resulting in damages to all members of the proposed class.

16. There are numerous questions of law and fact common to Plaintiff and members of the class and those questions predominate over any questions that may affect individual class members. The common questions of fact include:

    a. Whether Defendants were required to disclose their surcharge for balance inquiries.

    b. Whether Defendants were required to disclose that participating financial institutions impose a surcharge for balance inquiries.

    c. Whether such disclosure was made.

    d. Whether such disclosure, if made, was made prior to members incurring the surcharge.

    e. Whether Defendants advertised their balance inquiry offer.

    f. Whether Defendants' advertising practices were deceptive and misleading.

17. Among the questions of law common to the classes are the following:

    a. Whether Defendants breached a duty to class members.

    b. Whether Plaintiff is entitled to compensatory damages.

    c. Whether Plaintiff is entitled to punitive damages.

    d. Whether Plaintiff is entitled to attorney fees.

18. Plaintiff's claim is typical of that of the other class members. Plaintiff and class members have sustained losses arising out of the common course of conduct as alleged herein.

19. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the classes is impracticable. Furthermore, as the damages suffered by each individual class member may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual class members to redress the wrongs done to them. The cost to the court system of such individual adjudication would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of identical legal and factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member.

## FACTUAL ALLEGATIONS

20. Defendants operate hundreds of ATMs in California.

21. On or about August 22, 2008, Nathanson withdrew money via one of Defendants' ATMs.

22. The first question asked of Nathanson, when he logged onto Defendants' ATM, was "WOULD YOU LIKE TO VIEW YOUR ACCOUNT BALANCE?" There was no warning or disclosure that doing so would result in a surcharge.

23. When Nathanson selected "Yes," the next screen asked him to "SELECT THE INQUIRY ACCOUNT." There was no warning or disclosure that the inquiry would result in a surcharge.

24. Nathanson incurred a $1.50 surcharge for checking his account balance.

25. The receipt Defendants provided to Nathanson did not show the above surcharge.

26. Nathanson learned of the surcharge, later, by observing it on his bank statement.
27. By the time Nathanson learned of the surcharge, he had already incurred it and there was no opportunity to cancel the transaction.
28. When Nathanson withdrew money from his account, Defendants' ATM notified him that "THE AMOUNT CHARGED TO YOUR ACCOUNT WILL INCLUDE A FEE OF $2.00 IN ADDITION TO THE REQUESTED AMOUNT. THIS IS IN ADDITION TO ANY FEE CHARGED BY YOUR FINANCIAL INSTITUTION."
29. The withdrawal notice properly advised Nathanson of the surcharge he might incur. Defendants could have easily added that text to the balance inquiry screen.
30. On September 17, 2008, Nathanson notified Defendants as required by CCC § 1782(a). As of the filing of his original complaint, Defendants continue their unlawful business practices and continue to inflict harm on class members and the general public.

**FIRST CAUSE OF ACTION FOR VIOLATION OF THE CLRA BY ADVERTISING WITHOUT INTENT TO SELL AS ADVERTISED AGAINST ALL DEFENDANTS**

31. Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.
32. Merriam-Webster's Collegiate Dictionary, 10th Ed., 2002, defines advertise as "to make something known to."
33. Defendants made their balance inquiry service known to Nathanson by placing an offer to use it on their ATM's display screen. By so doing, Defendants "advertised" their balance inquiry service.
34. Defendants also advertised their withdrawal service via the ATM's display screen.
35. Defendants' advertisement for their withdrawal service advised Nathanson that there would be a charge for that service.
36. However, Defendants' advertisement for their balance inquiry service did not notify Nathanson of a charge and, thus, implied that there would not be a charge.

37. Defendants violated CCC § 1770 by advertising their balance inquiry service as being cost-free without intending to sell that service as advertised.

38. Nathanson suffered economic damage as a result of Defendants' violations of CCC § 1770.

39. Defendants' conduct, in encouraging Nathanson to use their balance inquiry service with the belief that doing so would not incur a charge, is sufficiently blameworthy to merit the imposition of punitive damages pursuant to CCC § 1780(a)(4), to punish, deter and make an example of Defendants.

40. Plaintiff and members of the Cardtronics class are entitled to an award of attorneys' fees and costs against Defendants pursuant to provisions of CCC § 1780(d)).

## SECOND CAUSE OF ACTION FOR UNFAIR COMPETITION
## AGAINST ALL DEFENDANTS

41. Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

42. California Financial Code (CFC) § 13080(a) prohibits ATM operators from imposing a surcharge unless that surcharge is clearly disclosed, electronically, on the ATM. Additionally, if the disclosure is not made prior to incurring the surcharge, the operator must permit the user to cancel the transaction and avoid the surcharge.

43. CFC § 13080(c) states that, where a surcharge is imposed by someone other than the operator, the operator shall disclose that the user may also be charged an additional fee by their institution.

44. CFC § 13020 defines an operator as "any bank, savings association, credit union, industrial loan company, savings bank, or other business entity, or any person who operates an automated teller machine."

45. Defendants are ATM operators.

46. Defendants failed to disclose the balance inquiry surcharge prior to Nathanson incurring said surcharge and also failed to permit Nathanson to cancel the transaction and avoid the surcharge.

47. Defendants violated CFC § 13080(a) by imposing a surcharge on Nathanson for checking his account balance inquiry without disclosing the surcharge, electronically, on the ATM.

48. If another entity, such as Nathanson's bank, imposed the surcharge, then Defendants violated CFC § 13080(c) by failing to disclose that he may be charged an additional fee by the other entity.

49. Business and Professions Code (BPC) § 17200 et seq., known as the Unfair Competition Law (UCL), prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

50. The UCL is a "borrowing" statute. It does not make conduct illegal; rather it permits civil prosecution of acts of "unfair competition" defined elsewhere.

51. Class members, such as Nathanson, used Defendants' balance inquiry service because Defendants' failure to disclose the fees reasonably lead them to believe that the service was free.

52. If Defendants disclosed the fee, as required, class members, such as Nathanson, would not have used it.

53. By their illegal conduct, Defendants caused more people to use their balance inquiry service than would have done so had Defendants obeyed the law.

54. Upon information and belief, Defendants received a portion of the undisclosed balance inquiry fees. This additional income gave Defendants an unfair competitive advantage over ATM operators who obeyed the law.

55. The financial institutions who received the balance (or all) of the undisclosed balance inquiry fees also benefitted from Defendants' conduct because it caused additional customers to checked their balances and incur the surcharge. This

gives banks an incentive to participate in Defendants' ATM network instead of Defendants' competitors where the balance inquiry fees are disclosed (and therefore less-often incurred). Defendants' illegal practices gave them an unfair advantage over their law-abiding competition.

56. As a direct and proximate result of Defendants' unfair and deceptive business practices, Plaintiff, class members, and Defendants' competitors have been injured.

57. As a direct and proximate result of Defendants' unfair and deceptive business practices, Defendants have been unjustly enriched and should be ordered to make restitution to Plaintiff and class members pursuant to BPC §§ 17203, 17204, and 17206.1.

58. Defendants' unlawful, unfair and fraudulent business practices described herein present a continuing threat to Plaintiff, class members, and the public in that Defendants, and each of them, persist and continue to engage in these practices. Defendants' conduct is causing—and will continue to cause—injury to Plaintiff, other class members, and the public.

WHEREFORE, Plaintiff seeks judgment as follows:

1. Compensatory general and special damages, in an amount in accordance with proof, but less than $5,000,000;

2. Disgorgement of balance inquiry fees;

3. Punitive damages in an amount sufficient to punish and to make an example of Defendants, and to deter others from engaging in similar conduct;

4. Reasonable attorney's fees, expenses and costs; and

5. Such other and further relief as the Court deems proper.

DATED: June 12, 2009

LAW OFFICES OF MANUEL H. MILLER, P.C.

By: _____
Max A. Sauler, Esq.
Attorney for Plaintiff

## DECLARATION OF MICHAEL NATHANSON

I, Michael Nathanson, declare as follows:

1. I am the plaintiff and class representative in NATHANSON v CARDTRONICS, INC., et al, case number CV 08-8587 DSF (RZx). I have personal knowledge of the matters contained in this declaration and, if called as a witness to testify, I could and would competently testify to them.

2. On or about August 22, 2008, I withdrew money from one of Defendants' ATMs.

3. The first question I was asked when I logged on, was "WOULD YOU LIKE TO VIEW YOUR ACCOUNT BALANCE?" There was no warning or disclosure that doing so would result in a surcharge.

4. When I selected "Yes," the next screen asked me to "SELECT THE INQUIRY ACCOUNT." Again, there was no warning or disclosure that the inquiry would result in a surcharge.

5. I would not have checked my account balance if I had known there was a fee for doing so.

6. I was charged $1.50 for checking my account balance.

7. The receipt Defendants provided to me did not show the above surcharge.

8. In or about October of 2008, I contacted Union Bank regarding the balance inquiry charge which appeared on my statement. A supervisor in the customer service area told me that Union Bank did not keep the entire charge. He said that it was split between various entities in the ATM/banking channel. He did not specify which entities received a portion of the charge or how much each entity received.

//
//
//
//
//
//

9.     I filed this action in the County of Los Angeles because the ATM which generated the balance inquiry charge at issue in this case was located in the County of Los Angeles.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on the 22nd day of April, 2009 in Los Angeles, California.

_____
Michael Nathanson

# PROOF OF SERVICE
## UNITED STATES DISTRICT COURT
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

CASE NAME: <u>MICAHEL NATHANSON V. CARDTRONICS, INC., ET AL.</u>
CASE NUMBER: CV 08-8587 DSF (RZx)

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 20750 Ventura Blvd, Suite 440, Woodland Hills, CA 91364.

On **June 12, 2009**, I served the foregoing document described as: **FIRST AMENDED COMPLAINT FOR DAMAGES**, in this action by placing a true coy thereof in a sealed envelope addressed as follows:

### *PLEASE SEE ATTACHED SERVICE LIST*

[X]   **<u>BY MAIL</u>**
As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Woodland Hills, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing the affidavit.

[X]   **<u>FEDERAL</u>**
I declare that I am employed in the office of a member of the bar of this Court at whose direction that service was made.

Executed on June 12, 2009, at Woodland Hills, California

Sandra Alvarez

- 1 -
PROOF OF SERVICE

# SERVICE LIST
## Nathanson v. Cardtronics, et al.
### Case No.: CV 08-8587 DSF (RZx)

Douglas P. Lobel, Esq.
COOLEY GODWARD KRONISH LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190

Ms. Michelle C. Doolin, Esq.
COOLEY, GODWARD, KRONISH, LLP
4401 Eastgate Mall
San Diego, California 92121